THE HONORABLE ROBERT S. LASNIK

05-CV-00058-AF

FILED ___ ENTERED
LODGED ___ RECEIVED

APR 24 2012

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., PATRICIA WEST, MBA, RCS, RVS, and DR. ALEXANDER D. SERRA,<br><br>Plaintiffs -Relators,<br><br>v.<br><br>CENTER FOR DIAGNOSTIC IMAGING,<br><br>Defendant. | No. C05-0058-RSL<br><br>[proposed] ORDER OF DISMISSAL WITH PREJUDICE |

Relators, Center for Diagnostic Imaging and the Government (the "Parties") have reached a proposed settlement agreement in this case and have filed a Joint Motion for Order of Dismissal with Prejudice, in which they seek entry of an Order approving the settlement and dismissing all remaining claims in this case with prejudice.

The Court has reviewed the terms of the settlement agreement between the Parties, and, pursuant to sections 3730(b), (c)(2)(B) and (d)(2) of the False Claims Act, 31 U.S.C. §3730(b) and (c)(2)(B), finds that the settlement is fair, adequate and reasonable under all the circumstances. The Court further finds pursuant to section 3730(d)(2) of the False Claims Act that the proposed Relator share of 30% of the settlement proceeds is reasonable. Therefore, in

ORDER OF DISMISSAL
WITH PREJUDICE- 1
C05-0058-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101-1271
(206) 553-7970

accordance with the terms of the settlement agreement, and pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, the Court hereby grants the Parties' motion to dismiss with prejudice, and ORDERS that all remaining claims in this case be and hereby are dismissed with prejudice.

DATED this 24th day of April, 2012.

ROBERT S. LASNIK
United States District Judge

Jointly presented by:

| | |
|---|---|
| GRAY, PLANT, MOOTY, MOOTY<br>& BENNETT, PA | HAGENS BERMAN SOBOL & SHAPIRO LLP |
| By /s/ Eric L. Yaffe<br>Eric L. Yaffe<br>Stephen J. Vaughan | By /s/ Thomas E. Loeser<br>Thomas E. Loeser<br>Steve W. Berman |
| Attorneys for Defendant<br>Center for Diagnostic Imaging, Inc. | Attorneys for Plaintiffs-Relators<br>Patricia West and Dr. Alexander Serra |
| By /s/ Barbara J. Duffy<br>Barbara J. Duffy<br>LANE POWELL PC | By /s/ Marc S. Raspanti<br>Marc S. Raspanti<br>PIETRAGALLO GORDON ALFANO<br>   BOSICK & RASPANTI, LLP |
| Attorneys for Defendant<br>Center for Diagnostic Imaging, Inc. | Attorneys for Plaintiffs-Relators<br>Patricia West and Dr. Alexander Serra |
| JENNY A. DURKAN<br>United States Attorney<br>Western District of Washington | By /s/ Marlan B. Wilbanks<br>Marlan B. Wilbanks<br>WILBANKS & BRIDGES, LLP |
| By /s/ Peter A. Winn<br>Peter A. Winn<br>Assistant United States Attorney<br>Western District of Washington | Attorneys for Plaintiffs-Relators<br>Patricia West and Dr. Alexander Serra |
| Attorneys for the United States | |

ORDER OF DISMISSAL
WITH PREJUDICE- 2
C05-0058-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WA 98101-1271
(206) 553-7970

## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) with respect to the Medicare Program (collectively the "United States"); Patricia West and Alexander Serra (collectively "Relators"); and Center for Diagnostic Imaging, Inc. (CDI, Inc.), Medical Scanning Consultants P.A. (MSC), Onex Corporation, and CDI-Seattle LLC (collectively "CDI") (the United States, Relators, and CDI hereafter referred to as "the Parties"), through their authorized representatives.

### II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. CDI, Inc. is a national radiology and imaging company headquartered in Minneapolis, Minnesota, which owns, operates, manages, and provides various other services to imaging centers throughout the United States. MSC is a national radiology group and imaging company headquartered in Minneapolis, Minnesota, which provides diagnostic and therapeutic radiology services in centers throughout the United States.

B. Dr. Alexander Serra and Patricia West ("Relators") are residents of the State of Washington. On January 13, 2005, Relators filed a *qui tam* action in the United States District Court for the Western District of Washington captioned *United States ex rel. West and Serra v. Center for Diagnostic Imaging, et al.*, 05-CV-00058 RSL (hereinafter "the Civil Action").

1

Relators have amended their Complaint four times. The operative Fourth Amended Complaint includes Four Counts: Count One: Violations of the Federal Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)); Count Two: Violation of the Stark Law (42 U.S.C. § 1395(nn), *et seq.*); Count Three: Federal False Claims Act (31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), (a)(1)(C), and (a)(1)(G)); and Count Four: Federal False Claims Act Retaliation (31 U.S.C. § 3730(h)). The Court dismissed Count Two by Order of 8/12/11. (Dkt. No. 146.) The United States did not intervene on any count of the Fourth Amended Complaint.

C. Relators contend that CDI submitted or caused to be submitted claims for payment to Federal health care programs, as defined by 42 U.S.C. § 1320a-7b(f).

D. Relators further contend that CDI improperly submitted these claims to Federal health care programs for reimbursement for diagnostic imaging services performed at CDI centers from the period of January 2000 to present, resulting in overpayments of monies owed to CDI in violation of applicable Federal billing rules; 31 U.S.C. § 3729 et seq.; and 42 U.S.C. § 1320a-7b(b) as alleged in the Fourth Amended Complaint, is hereinafter referred to as the "Covered Conduct").

E. This Agreement is neither an admission of liability by CDI nor a concession by Relators that their claims are not well founded. CDI expressly denies the allegations set forth in the Complaint, Amended Complaint, Second Amended Complaint, Third Amended Complaint, and Fourth Amended Complaint. Neither this Agreement, its execution, nor the performance of any obligation pursuant to it, including any payment, nor the fact of settlement, are intended to be, or shall be understood as, an admission of wrongdoing or liability, or other expression reflecting on the merits of the dispute by CDI.

2

G.  Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement, and to Relators' reasonable expenses, attorneys' fees, and costs.

H.  Relator West also contends that CDI improperly terminated her employment in violation of 31 U.S.C. § 3730(h) (hereafter referred to as "Relator West's Retaliation Claim"). Relators West's Retaliation Claim and Relators' claim for reasonable expenses, attorneys' fees, and costs pursuant to 31 U.S.C. § 3730(d) have been separately resolved.

I.  To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

## III. TERMS AND CONDITIONS

1.  CDI agrees to pay to the United States the sum of $1,500,000 (One Million Five Hundred Thousand Dollars) (the "Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office of the Western District of Washington. CDI agrees to make such electronic funds transfer no later than 30 days after the Effective Date of this Agreement or 15 days after the date on which the Court enters an order dismissing the Civil Action pursuant to this Agreement, whichever is later. Upon receipt of the Settlement Amount the United States will hold the Settlement Amount in a non-interest bearing suspense account and will not disburse any portion of it until the Dismissal With Prejudice, referenced in Paragraph 14, is entered by the Court. In the event the Court does not enter the Dismissal With Prejudice referenced in Paragraph 14, the United States will return to CDI any Settlement Amount paid and this Agreement will be null and void. Contingent upon a

determination by the Court pursuant to 18 U.S.C. § 3730(d)(2) that a 30% Relator share is reasonable, the United States as soon as feasible after the receipt of the Settlement Amount from CDI, agrees to pay $450,000 to Relators by electronic funds transfer. No other relator payment of any kind shall be made by the United States to the Relators with respect to the matters covered in this Agreement.

2. In consideration of the obligations of CDI in this Agreement, conditioned upon CDI's full payment of the Settlement Amount, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release CDI, together with its current and former parent corporations, direct and indirect subsidiaries, affiliates, related entities, brother or sister corporations, partners, contractors and their employees, owners and contractors, divisions, transferees, the successor and assigns of any of them, along with the corporations' officers, directors, and employees, from any civil claims the United States has, may have, or could have asserted for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud for the Covered Conduct.

3. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including CDI and Relator) are the following claims of the United States:

    a. Any criminal liability;

    b. Any administrative liability;

4

  c. Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

  d. Any liability to the United States (or its agencies) for any conduct other than that directly related to the Covered Conduct;

  4. In consideration of the obligations of CDI in this Agreement, conditioned upon CDI's full payment of the Settlement Amount, Relators, for themselves and for their heirs, successors, attorneys, spouses, agents, and assigns, agree to release CDI, together with its current and former parent corporations, direct and indirect subsidiaries, affiliates, related entities, brother or sister corporations, partners, contractors and their employees, owners and contractors, divisions, transferees, the successor and assigns of any of them, along with the corporations' officers, directors, and employees, from any civil or administrative monetary claim the Relators have, may have, or could have asserted, and all liability, claims, demands, actions, or causes of action whatsoever existing as of the Effective Date of this Agreement, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation or that they or their heirs, successors, attorneys, agents, and assigns asserted or could have asserted in the Civil Action or any other action. Realtors and their counsel represent that they are aware of no other person, attorney, or law firm that is asserting or has asserted any claims under 31 U.S.C. §§ 3729-3733 or 42 U.S.C. § 1320a-7b(b) relating to the Civil Action. The release set forth in Paragraph III.3 of this Agreement shall not include a release of CDI by Relator West for Relator West's Retaliation Claim and/or of CDI by Relators' for their reasonable expenses, attorneys' fees, and costs pursuant to 31 U.S.C. 3730(d).

5.  Relators and their respective heirs, successors, attorneys, agents, and assigns, including Relators' counsel in the Civil Action, shall not to object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators' receipt of the payment described in Paragraph 1, each of the Relators, for themselves individually, and for their heirs, successors, agents, and assigns, fully and finally releases, waives, and forever discharges the United States, its officers, agents, and employees, from any claims arising from or relating to 31 U.S.C. § 3730; from any claims arising from the filing of the Civil Action; from any other claims for a share of the Settlement Amount; and in full settlement of any claims that Relators may have under this Agreement. As noted in paragraph 3 above, this Agreement does not resolve or in any manner affect any claims the United States has or may have against the Relators arising under Title 26, U.S. Code (Internal Revenue Code) arising under this Agreement or otherwise.

6.  CDI waives and shall not assert any defenses CDI may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

7.  CDI fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and

6

however denominated) which CDI has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct or related to the United States' investigation and prosecution of the Civil Action.

8. In consideration of the obligations of the Relators in this Agreement, CDI fully and finally releases Relators and their respective heirs, successors, attorneys, spouses, agents, and assigns, from any civil or administrative monetary claim that CDI has, may have, or could have asserted, and all liability, claims, demands, actions, or causes of action whatsoever existing as of the Effective Date of this Agreement, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation or that its current and former parent corporations, direct and indirect subsidiaries, affiliates, related entities, brother or sister corporations, partners, divisions, transferees, the successor and assigns of any of them, along with the corporations' officers, directors, owners, and employees asserted or could have asserted in the Civil Action or any other action. The release set forth in Paragraph III.7 of this Agreement shall not include a release of Realtor West by CDI for Relator West's Retaliation Claim and/or of Relators by CDI for Relators' reasonable expenses, attorneys' fees, and costs pursuant to 31 U.S.C. 3730(d).

9. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct; and, if applicable, CDI agrees not to resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

10. CDI agrees to the following:

a. <u>Unallowable Costs Defined:</u> that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of CDI, its present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "Unallowable Costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) CDI's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment CDI makes to the United States pursuant to this Agreement and any payments that CDI may make to Relators, including costs and attorneys' fees.

b. <u>Future Treatment of Unallowable Costs:</u> These Unallowable Costs shall be separately determined and accounted for by CDI, and CDI shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement,

8

information statement, or payment request submitted by CDI or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: If applicable, CDI further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by CDI or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. CDI agrees that the United States, at a minimum, shall be entitled to recoup from CDI any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by CDI or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on CDI or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

9

    d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine CDI's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

  11. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 11 (waiver for beneficiaries paragraph), below.

  12. CDI agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

  13. CDI warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to CDI, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which CDI was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

10

14.     Upon execution of this Settlement Agreement and the separate agreement referenced in Preamble H., above, Relators, the Government and CDI shall promptly sign and file in the Civil Action a Joint Motion to Dismiss the remaining claims in the case with prejudice, pursuant to the terms and conditions of this Agreement.

15.     Except as expressly provided to the contrary by written agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

16.     CDI represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

17.     Relators represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

18.     This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is the United States District Court for the District for the Western District of Washington.

19.     For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21.     The individual(s) signing this Agreement on behalf of CDI represent and warrant that they are authorized by CDI to execute this Agreement. The individual(s) signing this

11

Agreement on behalf of Relators and on behalf of Relators' counsel represent and warrant that they authorized to execute this Agreement. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on CDI's successors, transferees, heirs, and assigns.

24 This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

25. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 4/23/12      BY: _____
                        PETER WINN
                        Assistant United States Attorney
                        Western District of Washington

                        JENNY A. DURKAN
                        United States Attorney
                        Western District of Washington

13

**CDI - DEFENDANT**

DATED: 4-20-12          BY: _____
                            PERCY C. TOMLINSON
                            Chief Executive Officer for
                            Center for Diagnostic Imaging, Inc.

DATED: 4/23/2012        BY: _____
                            ERIC L. YAFFE
                            STEPHEN J. VAUGHAN
                            Gray, Plant, Mooty, Mooty &
                            Bennett, P.A.
                            Counsel for Center for Diagnostic
                            Imaging, Inc.

14

### CDI - DEFENDANT

DATED: _____ BY: _____
PERCY C. TOMLINSON
Chief Executive Officer for Center for Diagnostic Imaging Inc.

DATED: _____ BY: _____
ERIC L. YAFFE, ESQUIRE
Gray, Plant, Mooty, Mooty & Bennett, P.A.
Counsel for Center for Diagnostic Imaging, Inc.

### RELATORS

DATED: 4/23/2012 BY: _____
PATRICIA WEST

DATED: 4/24/12 BY: _____
ALEXANDER SERRA, M.D.

### RELATORS' COUNSEL

DATED: 4/24/12 BY: _____
MARC S. RASPANTI, ESQUIRE
Pietragallo Gordon Alfano Bosick & Raspanti, LLP

DATED: 4/24/12 BY: _____
MARLAN B. WILBANKS, ESQUIRE
Wilbanks & Bridges, LLP

DATED: 4/24/12 BY: _____
THOMAS E. LOESER, ESQUIRE
Hagens Berman Sobol & Shapiro, LLP

15